```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JAMIE GARAY,

                        Plaintiff,
                                                MEMORANDUM & ORDER
            -against-                           12-CV-4988(JS)(GRB)

NOVARTIS PHARMACEUTICALS, CORP.,
RICHARD SCATONI and WILLIAM SHAUN
RILEY, in their official and
individual capacities,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Jamie Garay, pro se
                    16 Hallock Meadow Drive
                    Stony Brook, NY 11790

For Defendants:     Edward Cerasia, II, Esq.
                    Aaron Warshaw, Esq.
                    Ogletree Deakins Nash Smoak & Stewart, P.C.
                    1745 Broadway, 22nd Floor
                    New York, NY 10019
```

SEYBERT, District Judge

Plaintiff Jamie Garay ("Plaintiff") commenced this action pro se on October 5, 2012 against Defendants Novartis Pharmaceuticals, Corp. ("NPC"), Richard Scatoni, and William Shawn Riley (collectively, "Defendants"), asserting claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq., and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296. Pending before the Court is Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure. For the following reasons, Defendants' motion is GRANTED.

BACKGROUND[1]

Plaintiff began her employment with NPC in May 2004 as a pharmaceutical "Sales Consultant" in Suffolk County. (Compl. ¶ 21.) In May 2007, she was promoted to "Senior Sales Consultant" (Compl. ¶ 22), and in 2008, her territory was expanded to cover parts of Nassau County (Compl. ¶ 24). In February 2009, NPC hired Defendant Riley, who became Plaintiff's "First Line Manager" (Compl. ¶ 26), who was directly supervised by Defendant Scatoni, the Managing Director of the region (Compl. ¶ 27).

In May 2009, Plaintiff took a medical leave of absence due to a work-related injury, and she returned to NPC on September 15, 2009. (Compl. ¶ 29.) After her return to work, in or around December 2009, she received her annual performance review from Riley and Scatoni. (Compl. ¶ 38.) They gave her a "2-2" rating (Compl. ¶ 38), which indicated that she was a strong performer with good results and demonstrated good professional behaviors and values (Compl. ¶¶ 35, 39).

On October 7, 2010, Scatoni worked directly with Plaintiff in her territory, riding as a passenger in her company car and accompanying her on her visits to physicians' offices.

---

[1] The following facts are drawn from the pleadings in this action and the documents attached thereto and referenced therein.

(Compl. ¶ 41.) According to the Complaint, throughout the day, "Scatoni verbally abused, degraded and bullied" her. (Compl. ¶ 41.) He "used foul[,] offensive language during ordinary conversation" (Compl. ¶ 42), he "bullied" her because she was taking notes (Compl. ¶ 41),[2] he asked her in "a hostile manner" how she, as a non-Italian, knew about the Italian holiday, "Little Christmas" (Compl. ¶ 43), and he "became visibly agitated" when she "shared competitive information about sales representatives" (Compl. ¶ 44). Plaintiff, in accordance with NPC's policies and procedures,[3] reported Scatoni's conduct to Riley later that day (the "October Report"). (Compl. ¶¶ 45-46.) Plaintiff also told four other co-workers about "the abuse she suffered at the hands of Scatoni." (Compl. ¶ 47.)

Shortly thereafter, on December 2, 2010, Riley called Plaintiff to inform her that she was being laid off due to "tenure in territory." (Compl. ¶ 48.) At the time, Plaintiff was the second oldest employee in the region. (Compl. ¶ 36.) That same day, she received a letter in the mail from NPC's Vice President and Head Primary Care Business Unit, Brian M. Goff, explaining

---

[2] Plaintiff asserts that she needed to take notes because the medications she was taking for the injuries she sustained in her prior accident impaired her memory. (Compl. ¶ 41.)

[3] According to the Complaint, "[t]he normal procedure at [NPC] for raising issues is to report them to your immediate supervisor if you are able." (Compl. ¶ 46.)

3

that she was being terminated because NPC was in the process of "realign[ing]" its sales force, which resulted in a "workforce reduction" (the "Realignment Letter"). (Pl. Opp., Docket Entry 26, Ex. 1.) The letter continued:

> Consistent with the realignment, . . . you will be separated from employment during a period within fourteen days of February 7, 2011. Although you will remain an employee of NPC . . . and, as such, will receive your full salary and benefits entitlements through February 7, 2011, the last day you may be required to perform field sales work for the Company will be December 31, 2010.

(Id.; see also Compl. ¶ 49.) According to the Complaint, Susan Malkan, the oldest Senior Sales Associate in the district, was also terminated at this time. (Compl. ¶ 52.)

On or around December 15, 2010, Plaintiff contacted the "Alert Line"[4] to report her belief that she was being terminated for discriminatory and retaliatory reasons (the "December Report"). (Compl. ¶ 51.) Specifically, the Complaint asserts that Plaintiff believes she was terminated due to her age (although the Complaint does not state how old Plaintiff was when she was terminated) and gives examples of "decades younger" employees who

---

[4] The Complaint does not explain what the "Alert Line" is or whether it is affiliated with NPC.

4

were less qualified than Plaintiff[5] but, nonetheless, survived the realignment. (Compl. ¶¶ 58-67.)

In the interim, on or around December 7, 2011, Plaintiff commenced a second medical leave of absence (Answer ¶ 49), which continued until June 7, 2011 when she began receiving long-term disability benefits from MetLife after being declared totally disabled and unable to return to work (Answer ¶ 49 & Ex. A).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or around September 19, 2011 and received a Right to Sue letter on July 19, 2012. (Compl. ¶ 4.) Plaintiff then timely commenced this action on October 5, 2012. Defendants answered the Complaint on December 4, 2012 (Docket Entry 15) and moved for judgment on the pleadings on February 6, 2013 (Docket Entry 17). That motion is presently before the Court.

## DISCUSSION

The Court will first discuss the applicable standard of review under Rule 12(c) of the Federal Rules of Civil Procedure and the pleading standard for discrimination and retaliation claims under the ADEA and the NYHRL before turning to Defendants' motion.

---

[5] Plaintiff asserts that she had better customer overlap, better physician overlap, better customer continuity, and significantly longer tenure than these younger employees. (Compl. ¶¶ 56, 59, 61, 63, 65, 67.)

I.   Standard of Review under Rule 12(c)

The standard for deciding a motion pursuant to Rule 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998). In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a plausibility standard, which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of the allegations in the Complaint as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); accord Harris, 572 F.3d at 72. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). Although pro se plaintiffs enjoy a somewhat more liberal pleading standard, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

6

(internal quotation marks and citation omitted)), they must still comport with the procedural and substantive rules of law, see Colo. Capital v. Owens, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

Further, in deciding a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." L-7 Designs, Inc. v. Old Navy, L.L.C., 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)) (internal quotation marks omitted). The Complaint itself is also deemed to include any documents incorporated in it by reference and any document on which it heavily relies. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Consideration of matters beyond those just enumerated requires the conversion of the Rule 12(c) motion to dismiss into one for summary judgment under Rule 56. See FED. R. CIV. P. 12(d); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Thus, for the purposes of this Memorandum and Order, the Court will consider the documents attached to Defendants' Answer but not the documents attached to their moving papers, as the Court declines to convert this motion into one for summary judgment at this time.

II. Pleading Standard under the ADEA and the NYHRL

Both ADEA claims and NYHRL claims are analyzed under the burden-shifting paradigm established by the Supreme Court in

7

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Sutera v. Schering Corp., 73 F.3d 13, 16 n.2 (2d Cir. 1995) (stating that courts apply the McDonnell Douglas burden-shifting framework to claims under the ADEA and the NYHRL). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. 411 U.S. at 804. To establish a prima facie case of discrimination, a plaintiff must show that: (1) she was within the protected age group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the surrounding circumstances permit an inference of discrimination. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010); Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012). To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) the defendant knew of the protected activity; (3) she suffered an adverse employment action; and (4) there exists a causal connection between the protected activity and the adverse employment action. See Bucalo, 691 F.3d at 129; Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003).

The Supreme Court has held, however, that a plaintiff need not plead the elements of a prima facie case in his or her complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The prima facie case under

McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). Rather, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "giv[ing] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512 (quoting FED. R. CIV. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (internal quotation marks omitted). Thus, reconciling Swierkiewicz with Twombly and Iqbal, although "a complaint need not establish a prima facie case of employment discrimination [and/or retaliation] to survive a motion to dismiss . . . , the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); accord King v. U.S. Sec. Assocs., Inc., No. 11-CV-4457, 2012 WL 4122025, at *4 (S.D.N.Y. Aug. 22, 2012), adopted by 2012 WL 4327396 (S.D.N.Y. Sept. 18, 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009). "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a prima facie case." King, 2012 WL 4122025, at *5 (collecting cases).

III. Defendants' Motion

The Court will address Defendants' arguments in support of dismissing Plaintiff's discrimination and retaliation claims separately.

A. Discrimination

Defendants argue that they are entitled to judgment on the pleadings on Plaintiffs' discrimination claims on the grounds that: (1) Plaintiff has failed to plead an adverse employment action and (2) she is judicially estopped from arguing that she was qualified for her job. Because the Court finds that Plaintiff has failed to plead an adverse employment action, it will not address Defendants' other arguments.

In the context of a claim for discrimination under the ADEA, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)) (internal quotation marks omitted). To be considered materially adverse, the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya, 202 F.3d at 640 (internal quotation marks and citation omitted). The Second Circuit has held that such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Id.; see also Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006).

In the present case, although Plaintiff received notice that she was being terminated, there was no "materially adverse change" in her employment because she went out on disability before the effective date of her termination and there were no other adverse consequences, such as a reduced salary or loss of pay or benefits (see Pl. Opp. Ex. 1 (stating that her full salary and benefits would continue through February 2011)). See, e.g., Varela v. Potter, No. 02-CV-0334, 2006 WL 861274, at *9 (W.D. Ky. Mar. 29, 2006) (finding that a plaintiff had not suffered an adverse employment action because "her proposed removal never materialized; instead [the plaintiff] filed for and received disability retirement"); cf. Cheshire v. Paulson, No. 04-CV-3884, 2007 WL 1703180, at *6 (E.D.N.Y. June 12, 2007) (finding that an employer's proposed suspension and, later, termination did not constitute adverse employment actions as both were ultimately rescinded).

Accordingly, the Court finds that Plaintiff has failed to state a claim for discrimination under the ADEA or the NYHRL, and both claims are hereby DISMISSED.

B.  Retaliation

Defendants argue that they are entitled to judgment on the pleadings on Plaintiff's retaliation claims because: (1) Plaintiff cannot maintain a claim based on the October Report because this complaint did not involve Plaintiff's age and (2) Plaintiff cannot maintain a claim based on the December Report because this occurred after the alleged adverse employment action.[6]

1.  The October Report

Defendants argue that the October Report is not protected activity. The Court agrees. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000). Although "[i]nformal protests of discriminatory employment practices, including making complaints to management" constitute protected activity, Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990), "[t]he onus is on the speaker to clarify to the employer that he is complaining of

---

[6] Defendants also argue, again, that Plaintiff has failed to plead an adverse employment action. However, what qualifies as an adverse employment action in the context of a retaliation claim is much broader, see Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 207-08 (2d Cir. 2006); therefore, the above analysis does not necessarily bar Plaintiff's retaliation claim. For the purposes of this analysis, the Court is assuming, without deciding, that the adverse employment action as pled in the Complaint is sufficient.

12

unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally," Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009).

With respect to the October Report, the Complaint asserts that Plaintiff complained to Riley that Scatoni "spent approximately 6 hours harassing, ridiculing, bullying, verbally abusing and attacking [her] for health issues"--namely, for having to take notes. (Compl. ¶ 45.) However, the ADEA's anti-retaliation provision requires that the complaint be related to purported age discrimination, see 29 U.S.C. § 623(d), and there is no indication that Plaintiff reported to Riley that Scatoni's actions were at all motivated by Plaintiff's age, see, e.g., Stokes v. Nestle Purina Petcare Co., No. 12-CV-0089, 2012 WL 3746810, at *4 (W.D.N.Y. Aug. 28, 2012) (dismissing an ADEA retaliation claim because the plaintiff did not assert that she "complained to any supervisor or took any action at any time in opposition to perceived age discrimination," but instead complained generally about being harassed by a supervisor). Accordingly, the Court finds that the October Report was not protected activity and, thus, cannot be the basis for Plaintiff's ADEA or NYHRL retaliation claims.

### 2. The December Report

Defendants also argue that the December Report cannot be the basis for Plaintiff's retaliation claims because it occurred after Plaintiff received the Realignment Letter. The Court agrees. Here, Plaintiff received the Realignment Letter, notifying her that she was being laid off, on December 2, 2010, and she reported age discrimination to the Alert Line on December 15, 2010. (Compl. ¶¶ 49, 51.) However, even assuming, arguendo, that the Realignment Letter constituted an adverse employment action, Plaintiff has failed to plead facts plausibly suggesting a causal connection because the alleged protected activity occurred after the adverse employment action. See Pinero v. Long Island State Veterans Home, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity." (citing Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001))). Accordingly, Plaintiff's ADEA and NYHRL retaliation claims are hereby DISMISSED.

### IV. Leave to Replead

Although Plaintiff has not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely

14

give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)).

Here, the Court finds that leave to replead would be futile for the reasons articulated above. Accordingly, leave to replead is DENIED, and this action is DISMISSED WITH PREJUDICE.

CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED, and Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to serve a copy of this Memorandum and Order on the pro se Plaintiff and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED: September 3, 2013
Central Islip, New York